# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 16-21376-CIV-SCOLA/OTAZO-REYES

JOSEFA LOPEZ PENA,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

    Defendant.

_____/

## **REPORT AND RECOMMENDATION**

THIS CAUSE came before the Court upon Plaintiff Josefa Lopez Pena's ("Claimant") Motion for Summary Judgment [D.E. 19]; and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security's ("Commissioner") Motion for Summary Judgment [D.E. 20]. The administrative transcript (hereafter, "TR.") has been filed [D.E. 15].[2] This social security appeal was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Robert N. Scola, Jr., United States District Judge [D.E. 18]. For the reasons stated below, the undersigned respectfully recommends that Claimant's Motion for Summary Judgment be GRANTED, the Commissioner's Motion for Summary Judgment be DENIED, and the matter be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The TR. was filed in four separate parts, Docket Entry 15 containing pages 1-199, Docket Entry 15-1 containing pages 200-349, Docket Entry 15-2 containing pages 350-599, and Docket Entry 15-3 containing pages 600-824. The references hereafter (TR. __) are to the transcript pages rather than the court record pages.

## PROCEDURAL HISTORY

Claimant filed an application for Supplemental Social Security ("SSI") on May 24, 2012, alleging a disability onset date of November 2, 2011. TR. 135, 146, 246. The application was denied initially and upon reconsideration. Id. at 135, 146. Pursuant to a written request, a hearing was held on March 19, 2014 before Administrative Law Judge John S. Pope ("ALJ Pope") at which Claimant and Vocational Expert Jacquelyn Schabacker ("VE Schabacker") testified. Id. at 79-121. On May 30, 3014, ALJ Pope issued an Unfavorable Decision finding the following:

(1) Claimant had not engaged in substantial gainful activity since May 24, 2012, the application date (20 C.F.R. § 416.971 *et seq.*). Id. at 57.

(2) Claimant had the following severe impairments: cervical disc disease with postlaminectomy syndrome, left shoulder osteolysis, lumbar degenerative disc disease, migraine headaches, obesity, and major depressive disorder (20 C.F.R. § 416.920(c)). Id.

(3) Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). Id. at 65.[3]

(4) Claimant had the residual functional capacity (hereafter, "RFC") to perform sedentary work with certain limitations. Id.[4]

(5) Claimant was unable to perform any past relevant work (20 C.F.R. § 416.965). Id. at 71.[5]

---

[3] The Social Security Administration ("SSA") Listing of Impairments "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a).

[4] The RFC is the ability of a claimant to do physical and mental work activities on a sustained basis, despite the claimant's limitations or impairments. 20 C.F.R. § 416.945(a)(1). The RFC must be determined based on all of the claimant's impairments, even those that are not considered "severe." See 20 C.F.R. §§ 416.920, 416.945.

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" 20 C.F.R. § 416.967(a).

[5] "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b)(1).

(6) Claimant was born on March 19, 1967 and was 45 years old, which is defined as a younger individual aged 45-49, on the date the application was filed (20 C.F.R. § 416.963). Id.

(7) Clamant had at least a high school education and was able to communicate in English. (20 C.F.R. § 416.964). Id.

(8) Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Claimant was "not disabled," whether or not Claimant had transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). Id.

(9) Considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform (20 C.F.R. §§ 416.969 and 416.969(a)). Id.

(10) Claimant had not been under a disability, as defined in the Social Security Act, from May 24, 2012, the date the application was filed, through May 30, 2014, the date of the Unfavorable Decision (20 C.F.R. § 416.920(g)). Id. at 72.

The Appeals Council denied a request for review of ALJ Pope's Unfavorable Decision. Id. at 1-4. On April 16, 2016, pursuant to 42 U.S.C. § 405(g), Claimant filed this action seeking reversal of ALJ Pope's final administrative decision [D.E. 1].

In support of her contention that ALJ Pope's Unfavorable Decision should be reversed, Claimant argues that:

I. The ALJ committed legal error by finding Claimant had performed past relevant work.

II. The ALJ improperly weighed the medical opinions of Claimant's treating medical providers.

III. The ALJ failed to properly consider the medical opinion of a consultative examiner.

The undersigned only finds merit in Claimant's argument III and concludes that remand is appropriate on those grounds. The undersigned finds no merit in arguments I and II.

## RELEVANT MEDICAL EVIDENCE

### (1) Romel Figueredo, M.D., ("Dr. Figueredo")

On June 30, 2011, Dr. Figueredo began treating Claimant for complaints of cervical radiculopathy. TR. 317. On August 30, 2011, Dr. Figueredo drafted a letter stating:

> To Whom it May Concern: This letter is to certify that patient Josefa Lopez D.O.B. 03/19/67 is currently under my medical care at Doctor's Medical Center. Ms. Lopez came today to my office and at this time is presenting serious medical problems in the cervical spine and had cervical spine surgery. Due to her severe medical condition in her neck, she is limited to her normal daily activities and is recommended to rest at home until further notice. If you need any further information, please do not hesitate to contact me at: (305) 685-5688.

Id. at 303.

### (2) Cesar Guerrero, M.D. ("Dr. Guerrero")

On August 27, 2012, Dr. Guerrero, Claimant's surgeon, wrote a letter stating: "To whom it may concern, this patient had surgery of cervical spine on 12-1-2011 and [ILLEGIBLE] with severe pain to left shoulder and upper extremity. She is unable to work due to severity of the pain. Please provide [ILLEGIBLE] to be treated." Id. at 453.

### (3) Michael Pfeffer, M.D. ("Dr. Pfeffer")

On July 10, 2012, Dr. Pfeffer conducted a consultative examination of Claimant and drafted a letter (hereafter, "Pfeffer Medical Statement") which stated the following:

> [Claimant] has mild to moderate limitation with regard to prolonged standing, walking, or climbing. She has marked limitation with regard to situations where normal [range of motion] is required in the neck. She has mild limitation with regard to fine motor tasks in the upper extremities and mild limitation with regard to gross motor tasks of the upper extremities. She has limitations with regard to unprotected heights.

Id. at 429.

**(4) Jose Gonzalez, M.D. ("Dr. Gonzalez")**

On December 12, 2013, Dr. Gonzalez, Claimant's treating physician, Completed an RFC Questionnaire on Claimant and opined that Claimant could sit and stand for 20 minutes at a time; could sit, stand, and walk each for less than two hours; and needed to recline or lie down for an hour each day. Id. at 725. Dr. Gonzalez opined Claimant's symptoms constantly interfered with her attention and concentration and that she would need to take twenty minute breaks every twenty minutes. Id. at 725, 727. Dr. Gonzalez further opined that Claimant could: never lift any weight, stoop, crouch, kneel, or climb stairs; and rarely reach or use her hands or fingers. Id. at 727.

**(5) Manuela Georgescu, M.D. ("Dr. Georgescu")**

On December 26, 2013, Dr. Manuela Georgescu, Claimant's treating psychiatrist, completed a mental capacity assessment questionnaire. Id. at 730-34. Dr. Georgescu opined that Claimant had moderate limitation in her ability to:[6]

- Carry out very short and simple instructions;
- Make simple work-related decisions;
- Interact appropriately with the general public;
- Ask simple questions or request assistance;
- Maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and
- Respond appropriately to changes in the work setting.

Id. at 730, 732. Dr. Georgescu also opined that Claimant had marked limitation in her ability to:[7]

- Carry out detailed instructions;

---

[6] Moderate limitation means that "[t]he individual has limitations functioning in this area, one third of an eight hour work day." Id. at 730.
[7] Marked limitation means "[t]he individual has limitations functioning in this area, two thirds of an eight hour work day." Id.

5

- Maintain attention and concentration for extended periods;

- Perform activities within a schedule, maintain regular attendance, and be punctual within customary limits;

- Sustain an ordinary routine without special supervision;

- Work in coordination with or in proximity to others without being distracted by them;

- Complete a normal workday and workweek without interruptions from psychologically based symptoms;

- Perform at a consistent pace with a one hour lunch break and two 15 minute rest periods;

- Accept instructions and respond appropriately to criticism from supervisors;

- Get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

- Be aware of normal hazards and take appropriate precautions;

- Travel in unfamiliar places or use public transportation; and

- Set realistic goals or make plans.

Id. at 730, 732.

## HEARING TESTIMONY

On March 19, 2014, ALJ Pope held an administrative hearing at which Claimant and VE Schabacker testified. TR. 79-121.

(1) <u>Claimant</u>

Claimant testified that she was licensed as a certified nursing assistant ("CNA") and last worked in October 2011. Id. at 86-87. Claimant stated that she worked as a CNA over 40 hours at a home care agency for over three years. Id. at 87. Prior to coming to the United States from Cuba in 2005, Claimant worked as a nurse for fifteen years. Id. at 87-88. Claimant also testified that she worked as a pizza deliverer for about a year in 2008. Id. at 88. Claimant stated she was unable to work due to neck and back problems and depression. Id. at 88-89, 110-11. Claimant

testified that she could not sit for more than 45 minutes and could not lift more than 10 to 12 pounds. Id. at 89.

(2) VE Schabacker

ALJ Pope noted that Claimant's past work was that of certified nurse's aide and pizza deliverer, to which Claimant did not object. Id. at 114-15. VE Schabacker testified that a hypothetical individual with Claimant's age, education and RFC of light exertion with certain limitations would not be able to perform Claimant's past work. Id. at 116.[8]

VE Schabacker also testified that a hypothetical person with Claimant's age, education, work history, and RFC could perform jobs including:

> Document addresser: DOT # 209.587-010, with approximately 25,000 jobs in the national economy and 200 jobs in the local economy;[9]

> Surveillance system monitor: DOT # 379.367-010, with approximately 30,000 jobs in the national economy and 300 jobs in the local economy; and

> Document preparer: DOT # 249.587-018, with approximately 40,000 jobs in the national economy and 300 jobs in the local economy.

Id. at 117.

## STANDARD OF REVIEW

A federal court's "review of a social security case is demarcated by a deferential reconsideration of the findings of fact and exacting examination of the conclusions of law." Williams v. Astrue, 416 F. App'x 861, 862 (11th Cir. 2011). Thus,

> [t]he Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must

---

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

[9] DOT is the acronym for the Dictionary of Occupational Titles, which was created by the Employment and Training Administration and groups jobs based on their similarities, and defines the structure and content of all listed occupations. See Dictionary of Occupational Titles app. c (4th ed., rev. 1991), http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

7

> include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

Kieser v. Barnhart, 222 F. Supp. 2d 1298, 1305 (M.D. Fla. 2002). However, the Commissioner's "conclusions of law, including applicable review standards, are not presumed valid." Williams, 416 F. App'x at 862.

### REGULATORY FRAMEWORK: THE FIVE-STEP SEQUENTIAL PROCESS

The Social Security Regulations outline a five-step "sequential" evaluation process used to determine whether a claimant is disabled.

First, the ALJ must determine whether a claimant is engaged in "substantial gainful activity" (hereafter, "SGA"). If the ALJ finds that the claimant is engaging in SGA, then the ALJ must find that the claimant is not disabled. Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). In this case, ALJ Pope determined that Claimant had not engaged in SGA since the application date of May 24, 2012, and proceeded to step two. TR. 57.

At the second step, the ALJ must determine if a claimant's impairments are "medically severe." If the ALJ determines that the claimant's impairments are medically severe, then he or she must proceed to the third step. Phillips, 357 F.3d at 1237. In this case, ALJ Pope found that Claimant suffered from the following severe impairments: cervical disc disease with postlaminectomy syndrome, left shoulder osteolysis, lumbar degenerative disc disease, migraine headaches, obesity, and major depressive disorder. TR. 57. ALJ Pope then proceeded to step three. Id. at 65.

At step three, the ALJ must determine if a claimant's impairment(s) "meet or equal" any of the listed impairments in the regulations. Phillips, 357 F.3d at 1238. If so, the ALJ must find

the claimant disabled; if not, then the ALJ should proceed to step four. Id. Here, ALJ Pope determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. TR. 65. Therefore, ALJ Pope proceeded to step four. Id.

Step four is a two-pronged process, which first requires the determination of a claimant's RFC and then, based on that RFC, a determination of whether the claimant can return to any "past relevant work." Phillips, 357 F.3d at 1238. As to the first prong, ALJ Pope determined that Claimant

> has the [RFC] to perform sedentary work as defined in 20 [C.F.R. §] 416.967(a), with the following exceptions: she may only occasionally climb, balance, stoop, kneel, crouch, or crawl. She must never reach overhead with the bilateral upper extremities. She is limited to frequent forward reaching and gripping with the bilateral upper extremities. She must avoid concentrated exposure to hazards including unprotected heights. She is limited to unskilled work.[10]

TR. 65. Based on Claimant's RFC, ALJ Pope moved to prong two of step four and concluded that Claimant was unable to perform any past relevant work. Id. at 71.

ALJ Pope then proceeded to the fifth and final step. Id. At that step, the burden shifts to the ALJ to show that the claimant has the ability to perform work that is available in significant numbers in the national economy, considering her RFC, age, education, and work experience in order to find the claimant not disabled. Phillips, 357 F.3d at 1239-40. In this case, ALJ Pope determined that, given Claimant's RFC, age, education, and work experience, there were jobs that existed in significant numbers in the national economy which Claimant could perform. TR. 71. Therefore, ALJ Pope concluded that Claimant was not under a disability, as defined in the Social Security Act, from May 24, 2012, the application date, through May 30, 2014, the date of the Unfavorable Decision. Id. at 72.

---

[10] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

9

## DISCUSSION

As previously noted, Claimant argues that:

I. The ALJ committed legal error by finding Claimant had performed past relevant work.

II. The ALJ improperly weighed the medical opinions of Claimant's treating medical providers.

III. The ALJ failed to properly consider the medical opinion of a consultative examiner.

Because the undersigned finds merit in argument III, that argument is addressed first. The undersigned then addresses the remaining arguments, as to which the undersigned finds no merit.

### I. Failure to Weigh Consultative Examiner's Opinion

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). An ALJ is "required to state with particularity the weight [given to] the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). This applies to the opinion of a state agency medical or psychological consultant. Maffia v. Comm'r of Soc. Sec., 404 F. App'x 352, 354 (11th Cir. 2010). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

ALJ Pope discussed the Pfeffer Medical Statement and noted, in pertinent part, that Dr. Pfeffer "found marked limitation with regard to situations where normal range of motion is

required in the neck." TR. 59. The Commissioner concedes that the Pfeffer Medical Statement constitutes a medical opinion and that ALJ Pope did not assign it any weight. See Commissioner's Motion for Summary Judgment [D.E. 20 at 19]. Thus, it is undisputed that ALJ Pope failed to comply with the requirement that he "state with particularity the weight [given to] the different medical opinions." Sharfarz, 825 F.2d at 279; see Maffia, 404 F. App'x at 354. Due to this failure, it is impossible for the undersigned to determine whether ALJ Pope's decision is supported by substantial evidence. Winschel, 631 F.3d at 1179.

The Commissioner argues that ALJ Pope's error was harmless for two reasons.

First, the Commissioner argues that the Pfeffer Medical Statement is consistent with the RFC. See Commissioner's Motion for Summary Judgment [D.E. 20 at 20]. Further, the Commissioner argues that ALJ Pope included the overhead-reach and forward-reach-or-grip limitations to account "for the problems in [Claimant's] left shoulder and the complaints of radiating pain from the neck." TR. 66. However, the RFC does not mention range of motion of the neck. And contrary to the Commissioner's contention, ALJ Pope's statement does not support the inference that he considered Claimant's range of motion limitations when deciding the RFC, since he only mentions Claimant's arm and neck pain.

Second, the Commissioner argues that the Pfeffer Medical Statement is consistent with the jobs identified by VE Schabacker because the DOT's descriptions of the jobs "do not indicate that [they] require significant neck motion and are not inconsistent with a limitation to reduce[] motion in the neck." See Commissioner's Motion for Summary Judgment [D.E. 20 at 20]. However, ALJ Pope relied on VE Schabacker's testimony—not the DOT—to determine that jobs existed in the economy that Claimant could perform, and the range of motion limitation was not included in the hypothetical posed to VE Schabacker. TR. 72. Thus, the error was not harmless. Dial v. Comm'r of Soc. Sec., 403 F. App'x 420, 421 (11th Cir. 2010) ("[W]hile the

11

ALJ could have chosen to rely on the DOT, he instead relied only on the testimony of the VE, who was not instructed on all of Dial's limitations. Thus, we cannot say that the ALJ's error was harmless.").

Accordingly, the undersigned respectfully recommends that this case be remanded to the Commissioner to expressly weigh Dr. Pfeffer's opinion.

## II. Opinions of Treating Medical Sources

As noted above, an ALJ is "required to state with particularity the weight [given to] the different medical opinions and the reasons therefor." Sharfarz, 825 F.2d at 279. "[T]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). The Eleventh Circuit has held that "good cause" exists where the: (1) treating physician's opinion was "not bolstered by the evidence;" (2) "evidence supported a contrary finding;" or (3) the treating physician's opinion was "conclusory or inconsistent with their own medical records." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). "When the ALJ has articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." Weekley v. Comm'r of Soc. Sec., 486 F. App'x 806, 808 (11th Cir. 2012) (citing Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Claimant challenges the weight given to Dr. Figueredo's and Dr. Guerrero's letters, and to Dr. Gonzalez's and Dr. Georgescu's opinions. See Claimant's Motion for Summary Judgment [D.E. 19 at 13-20].

(1) Dr. Figueredo and Dr. Guerrero

ALJ Pope discussed Dr. Figueredo's and Dr. Guerrero's letters as follows:

Also in August 2012, two of the claimant's treating physicians wrote letters indicating her inability to work. First, Dr. Guerrero wrote that the claimant was

12

unable to work due to the severity of the pain in her left shoulder and upper extremity, ongoing after surgery in December 2011. Three days later, Dr. Figueredo wrote a letter certifying that the claimant was under his medical care. Due to the severe condition in her neck, he wrote, "she is limited to her normal daily activities and is recommended to rest at home until further notice." His treatment notes from the same period reflect similar advice. As an initial matter, the undersigned emphasizes that the reduced range of sedentary exertion above does constitute "reduced physical activity." Neither Dr. Guerrero nor Dr. Figueredo specifies the level of functioning that she remains able to do. Limitation to her "normal daily activities" suggests that she can function around the home. For his part, Dr. Guerrero simply makes a determination reserved for the Commissioner, stating that the claimant is unable to work but not outlining why, or in which ways her functionally [sic] is specifically reduced. For these reasons, the undersigned cannot give these statements weight.

TR. 69 (citations omitted).

With regard to Dr. Guerrero, ALJ Pope correctly notes that his letter made a determination reserved to the commissioner; accordingly, it was not a medical opinion entitled to weight. Hutchinson v. Astrue, 408 F. App'x 324, 327 (11th Cir. 2011); see Taylor v. Comm'r of Soc. Sec., No. 15-cv-713-ORL-28TBS, 2016 WL 4385867, at *5 (M.D. Fla. June 14, 2016) ("Whether Plaintiff is disabled or unable to work is a matter reserved to the Commissioner for determination."), report and recommendation adopted, 2016 WL 4385847 (M.D. Fla. Aug. 15, 2016).

Further, ALJ Pope stated that Dr. Figueredo's and Dr. Guerrero's letters did not specify the level of function that Claimant could perform, which finding was not challenged by Claimant. Because a medical opinion must include "what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions," Winschel, 631 F.3d at 1178-79, failure to include Claimant's remaining functioning level means that Dr. Figueredo's and Dr. Guerrero's letters do not constitute medical opinions. Thus, they need not be weighed.

(2) Dr. Gonzalez and Dr. Georgescu

Regarding Dr. Gonzalez's opinion, ALJ Pope stated:

Dr. Gonzalez, in assessing some rather extreme limitations, in excess of the

13

claimant's own estimates, indicates only that she has difficulties with grooming and activities at home. He does not cite to severe clinical or objective findings or other reasons that based on his own observations—when asked to do so, in fact, he left the questions blank. Indeed, the claimant having difficulties with grooming and activities at home would seem something he would know only because of the claimant's report, not because of his expertise as a physician. Without explanation on the form itself, the undersigned turns to the treatment record for support. As this form's date in December 2013, Dr. Gonzalez had seen the claimant five times. He has prescribed and refilled medications for gastritis, dermatophytosis, and nerve pain; referred her to pain management, neurology, gynecology, and ophthalmology; educated her about obesity and diet opinions; and noted observations such as "she looks better." His physical examination findings have been almost entirely normal, with the exception of vague notation that "sensory exam abnormalities were noted" and limited range of motion in the left shoulder after her car accident. Other than the claimant's report of difficulty completing activities of daily living, therefore, the undersigned finds little support for the extreme limitations he assessed and gives the opinion no weight.

TR. 69-70 (citations omitted). Regarding Dr. Georgescu's opinion, ALJ Pope stated:

Dr. Georgescu indicated that the claimant has marked difficulties in eight of 11 activities of sustained concentration and persistence, two of five activities of social interaction, and three of four adaptation activities. She further found moderate limitations in the remaining three activities of social interaction. Nevertheless, she checked that the claimant can manage benefits in her own best interests. Dr. Georgescu provided no explanation for these findings. As noted above, standard form medical questionnaire earn little weight without explanation in the form of a narrative. Here, there is no explanation whatsoever. Review of the treatment record demonstrates ongoing improvement, as well as ratings of "7" on a functioning table. The information in her treatment notes, therefore, does not provide the missing explanation for these significant limitations. The undersigned cannot give the form opinion any weight.

Id. at 70 (citations omitted).

Claimant argues that ALJ Pope misrepresented the evidence with respect to Dr. Gonzalez's and Dr. Georgescu's opinions and points to record evidence that she believes is contrary to ALJ Pope's conclusions. See Claimant's Motion for Summary Judgment [D.E. 19 at 15-20]. Claimant further argues that ALJ Pope did not articulate good cause for rejecting Dr. Gonzalez's and Dr. Georgescu's opinions. Id. at 20. However, ALJ Pope did provide his reasons for assigning Dr. Gonzalez's and Dr. Georgescu's opinions no weight, which constitute

"good cause;" and ALJ Pope supported his decision with "such relevant evidence as a reasonable person would accept as adequate to support the conclusion from the record." Kieser, 222 F. Supp. 2d at 1305; see Weekley, 486 F. App'x at 808; Lewis, 125 F.3d at 1440; Phillips, 357 F.3d at 1240.[11]

### III. Claimant's Past Relevant Work

The claimant bears the burden of showing that her work experience is not past relevant work. Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). Past relevant work exists when three conditions are met: (1) the work was recent, i.e., it occurred within 15 years; (2) the work was of sufficient duration, i.e., the claimant had enough time to learn the skills needed for average performance in the job; and (3) the work constituted substantial gainful activity. SSR 82–62; see also 20 C.F.R. § 416.960(b)(1). Work is substantial if the work activity "involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). Work is gainful if it is done for pay or profit. Id. § 416.972(b). Generally, monthly earnings will not result in a finding of substantial gainful activity when a claimant earned less than or equal to: $860 per month in 2006; $900 per month in 2007; $940 per month in 2008; $980 per month in 2009; and $1,000 per month in 2010 and 2011. 20 C.F.R. § 416.974(b)(2)(i); Program Operations Manual Systems ("POMS"), DI 10501.015. "Earnings, however, are not dispositive." Eyre v. Comm'r, Soc. Sec. Admin., 586 F. App'x 521, 524 (11th Cir. 2014). Notwithstanding the claimant's earning, "if other evidence indicates that the claimant was engaged in substantial gainful activity[,] . . . the ALJ can consider other information . . . taking into account the time, energy, skill, and responsibility involved in the work." Id.

---

[11] Claimant also argues that ALJ Pope failed in his duty to recontact the treating physicians. See Claimant's Motion for Summary Judgment [D.E. 19 at 15, 17]. However, the decision to recontact a physician is "entirely discretionary." Murphree v. Colvin, No. 4:14-cv-02483-SGC, 2016 WL 1270528, at *5 (N.D. Ala. Mar. 31, 2016) (citations omitted). As the undersigned has found no error in ALJ Pope's weighing of Dr. Figueredo's and Dr. Guerrero's letters, and Dr. Gonzalez's and Dr. Georgescu's opinions, ALJ Pope had no duty to recontact these doctors.

15

Here, Claimant argues that her earnings for the years 2006 to 2011 fall below the threshold set by the Commissioner to establish SGA; hence, ALJ Pope erred in finding that she had engaged in past relevant work. See Claimant's Motion for Summary Judgment [D.E. 19 at 11-13]. However, given Claimant's testimony regarding the length and nature of her past work as a nurse and pizza deliverer, and her failure to object to ALJ Pope's consideration of these positions as past relevant work at the hearing, the undersigned concludes that Claimant has failed to meet her burden of showing that her work experience is not past relevant work. Eyre, 586 F. App'x at 524; Barnes, 932 F.2d at 1359.[12]

## CONCLUSION

Based on the foregoing considerations, it is **RESPECTFULLY RECOMMENDED** that Claimant's Motion for Summary Judgment [D.E. 19] be **GRANTED**, the Commissioner's Motion for Summary Judgment [D.E. 20] be **DENIED**, and the case be **REMANDED** to the Commissioner for further proceedings in accordance with this Report and Recommendation.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have <u>fourteen</u> days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Robert N. Scola, Jr., United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp.

---

[12] Claimant also argues that ALJ Pope erred in failing to make a finding as to whether Claimant had any transferable job skills. See Claimant's Motion for Summary Judgment [D.E. 19 at 12-13]. ALJ Pope found that "[t]ransferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Claimant was 'not disabled,' whether or not Claimant had transferable job skills." TR. 71. ALJ Pope also found that Clamant was able to communicate in English, which finding was not challenged by Claimant. Id. According to Medical Vocational Guidelines, "a finding of 'disabled' is warranted for individuals ages 45-49 who: (i) Are restricted to sedentary work, (ii) Are unskilled or have no transferable skills, (iii) Have no past relevant work or can no longer perform past relevant work, and (iv) Are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(h). Contrary to Claimant's argument, ALJ Pope's finding regarding transferability was not erroneous, since Claimant would not be considered disabled under the Guidelines given ALJ Pope's unchallenged finding that Claimant could speak English.

16

v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida on this 8th day of May, 2017.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Robert N. Scola, Jr.
Counsel of Record